[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUVENILE COURT JOURNAL ENTRY ACCELERATED CALENDAR JOURNAL ENTRY AND OPINION
{¶ 1} The opinion announced May 6, 2004, is hereby amended, nunc pro tunc, as follows:
 {¶ 2} On Page 9, the last two sentences before the first full paragraph, and their accompanying footnotes, are deleted. The deleted sentences read:
 {¶ 3} "Moreover, CCDHS is not a named party to theseproceedings; it did not intervene to seek recovery of publicfunds, and CSEA is not a proper party to recover funds for CCDHS.Even though CSEA has broad powers to participate in child supportproceedings, it has no independent right of recovery, and it hasno standing to initiate and maintain an enforcement action on itsown."(Citations Omitted.)
 {¶ 4} On page 9, the third sentence of the first full paragraph, and its accompanying footnote, is deleted. The deleted sentence reads:
{¶ 5} "No public agency is present to enforce a public rightin this case, and a parent remains entitled to forgo privateenforcement of a child support order." (Citation Omitted.)
 {¶ 6} It is hereby ordered that said Opinion announced on May 6, 2004, be amended nunc pro tunc on Page 9 of the Opinion as stated above.
 {¶ 7} It is further ordered that said Opinion of May 6, 2004, shall stand in full force and effect in all its particulars. This nunc pro tunc does not affect the final judgment of this Opinion.
 {¶ 8} The amended Opinion is attached.
Karpinski, J., and Gallagher, J., concur.
H.S., acting pro se, appeals from a judgment of visiting Juvenile Court Judge June R. Galvin that ordered him to pay child support arrears of $3,543.05 and maternity expenses of $2096.00 to E.T., fka E.L., in satisfaction of a paternity finding and child support award entered in 1965. He claims the doctrine of laches should prevent enforcement of the award, but the Cuyahoga County Child Support Enforcement Agency ("CSEA"), which brought the action on E.T.'s behalf, claims that laches cannot be applied to bar enforcing the award. We reverse and remand
In March of 1964, E.T. gave birth to a daughter and, on April 21, 1964, she filed a paternity action against H.S. seeking child support and payment of maternity expenses.[1] On October 18, 1965, he admitted the paternity claim, and Judge Angelo J. Gagliardo entered a finding that he was the "reputed father" of E.T.'s child, and ordered him to pay $5.00 per week in child support and $2,096.00 in maternity expenses, also in $5.00 weekly installments.
On July 18, 2001, CSEA, on E.T.'s behalf, filed a "Motion to Determine and Liquidate Arrears" that H.S. owed to both E.T. and to the Cuyahoga County Department of Human Services ("CCDHS") under the 1965 order. Although CCDHS was not made a party to the action, CSEA claimed that the maternity expenses were owed to CCDHS, but made no claim concerning CCDHS's entitlement to unpaid child support owed to E.T.H.S., pro se, moved to dismiss, and claimed that he was not the father of E.T.'s child, that he had been coerced into admitting paternity, and that E.T. had consistently known his whereabouts since 1965, but had never sought payment of any child support or maternity expenses. His motion claimed a due process right to be timely confronted with the support action, and concluded with a statement that "thirty-eight years is far too long to be persecuted under the so-called colors of the law."
On February 24, 2003, H.S. filed, again pro se, an amendment to his motion for dismissal in which he claimed that E.T. and her daughter, then thirty-eight-years-old, had refused to submit to genetic testing, which the parties had previously agreed to undergo. Without addressing or ruling on that motion, Judge Galvin entered a judgment finding that H.S. owed $2,096.00 in maternity expenses and $3,543.05 in unpaid child support.[2] The order stated that both sums were owed to the obligee, E.T., and H.S. was ordered to make monthly payments of $200.00[3] to CSEA for her benefit.
He asserts two issues for review, which we accept as assignments of error and which are attached in Appendix A to this opinion.
I. Right to Genetic Testing
H.S. first claims that his admission of paternity is invalid because he was then a minor and not represented by a lawyer and was denied the right to counsel. Such a claim is not cognizable here because he did not appeal from the original paternity proceedings. However, his challenge to the paternity finding also challenges the judge's failure to grant his amended motion for dismissal. A May 15, 2002, entry on the appearance docket states that the parties had reached an agreement to undergo genetic testing to verify the paternity finding, and H.S. sought dismissal of the enforcement action after E.T. and her daughter refused to comply with that agreement.
CSEA counters that H.S. had no right to seek genetic testing because R.C. 3111.05 states that an action to determine paternity may not be brought later than five years after the child's eighteenth birthday. CSEA also argues that, even if the agreement was enforceable, he was not entitled to a dismissal because of E.T.'s and her daughter's failure to cooperate, and that his only remedy was to move to enforce the agreement to undergo genetic testing. Therefore, CSEA submits that the judge did not err in refusing to dismiss the enforcement action.
Because this is not an original action to determine paternity, R.C. 3111.05 is inapplicable. R.C. 3119.96 et seq. provides a right to seek relief from a judgment of paternity without a specific time limit. Moreover, under R.C. 3119.963, the judge is authorized to order genetic testing and to enter judgment against any party who "willfully fails to submit" to genetic testing. Therefore, H.S. had a right to seek genetic testing and a right to seek dismissal of the enforcement action because of the mother's and daughter's failure to fulfill the agreement to undergo testing.
Although it does not appear that H.S. specifically invoked R.C.3119.96 et seq. during the proceedings, the record reflects that the parties had agreed to genetic testing, and that the judge approved the agreement and continued the hearing pending receipt of the results. Under these circumstances, we find that he was not required to invoke the statutory sections in order to have them applied.
We do not have the benefit of knowing the judge's view on the amended motion to dismiss. Her failure to address the issue in the judgment is deemed a denial of H.S.'s amended motion to dismiss.[4] From the record before us, however, we conclude that R.C. 3119.963 entitles H.S. to a dismissal. Any presumption of regularity is defeated because H.S. has satisfied his burden of showing error in the proceedings.[5] Although R.C.3119.96 et seq. gives a judge some discretion in managing genetic testing proceedings, the unexplained judgment is not supported by the current record. We, therefore, sustain the first assignment of error and remand for further proceedings on this issue. On remand, the judge should either enter judgment against E.T. because of her failure to cooperate or, if another conclusion is reached, explain the evidence and reasoning that supports that judgment.
II. Laches
Although our resolution of the first assignment requires remand for further proceedings, we must also address the second assignment because it seeks a reversal and entry of judgment in H.S.'s favor. He claims the enforcement action is barred by laches, an equitable doctrine that would act as a complete bar to recovery[6] even if the paternity finding is valid. CSEA counters, however, that he is barred from raising the laches defense on appeal because he failed to assert it in the juvenile court proceedings. We disagree. As noted supra, H.S.'s original memorandum seeking dismissal argued that "thirty-eight years is far too long to be persecuted under the so-called colors of the law." He also argued that he had a right to timely institution of enforcement proceedings, he claimed that E.T. failed to seek enforcement despite having opportunities to do so, and he claimed that he was prejudiced by the delay because he is now disabled and his earning potential is limited. Such claims fit the definition of laches, which requires a showing of an unreasonable, unexplained delay that causes prejudice.[7]
Therefore, H.S. adequately raised the defense in the lower court proceedings.
CSEA also argues that laches cannot be applied to a government agency and, therefore, a lapse of time can never prevent it from enforcing a child support order. Government agencies, however, have never been absolutely relieved from the doctrine of laches; the Ohio Supreme Court has stated only that the doctrine generally is not applied to the government.[8] Parties are prevented from asserting laches against the government because its application would prevent the government from enforcing public rights on behalf of its citizens.[9] We must determine, therefore, whether the rights at issue here are public or private in character.
The judge's order required payments to be made for E.T.'s benefit, but it did not order payments to recoup any government expenditures for her daughter's support. Even though the motion did claim that at least part of the money was owed to CCDHS, the order contemplates that all amounts will be paid to E.T., and CSEA has not appealed.
E.T.'s use of CSEA to enforce her right to child support does not make the action one to enforce a public right. The State may enforce a public right by seeking recoupment of public assistance funds spent for child support, but that is not the nature of the action here. Therefore, even though CSEA is assisting E.T. in pursuing her claim, it does not appear that the right at issue is public in nature, and there is no reason to forbid application of the doctrine of laches on E.T.'s personal claim.
CSEA next claims that, even if the doctrine can be applied, H.S. has failed to show laches because he cannot establish the required prejudice. In Connin v. Bailey,[10] the Ohio Supreme Court found that a thirty-five year delay in enforcing a support award was not barred by laches, but the primary issue in that case concerned whether the plaintiff had an adequate explanation for the delay in seeking enforcement. The court found the delay excusable because the plaintiff had previously obtained orders of enforcement and contempt citations, but had stopped seeking court enforcement because her ex-husband never complied with the enforcement orders she had previously obtained.[11] Although the Connin court also found that the defendant had not shown material prejudice, the resolution of this issue focused on the defendant's claims that records of past payments might be missing, rather than on any claim that the defendant's estate was unable to pay the award after the delay, or that the defendant had relied on representations that enforcement would not be sought.[12]
H.S. claimed prejudice not only because of his age, disability, and limited earning capacity, he also claimed that E.T. had previously informed him that she would not seek to enforce the support order against him. CSEA has not challenged these claims, but contends that they are no more than "generic assertions of hardship." We disagree. Seeking enforcement of a child support order twenty years after the child has reached the age of majority, when the defendant is medically infirm and approaching sixty years of age, is not a generic assertion of hardship. H.S.'s age, medical condition, earning capacity, and reliance on alleged statements absolving him of responsibility, all are specific claims of prejudice that deserve to be considered.
Although a finding of laches would defeat E.T.'s child support claims in their entirety, we cannot enter judgment in H.S.'s favor because the record does not reflect the presentation of evidence on the laches claim or the judge's consideration of that evidence. Again, however, we will not presume regularity from the absence of a transcript because the record before us shows that H.S. presented sufficient evidence to support his laches defense. Although laches is primarily a question of fact[13] for the judge's determination, the record here indicates a failure to consider the defense. Therefore, this issue also must be remanded for further proceedings. The second assignment is sustained.
Judgment reversed and remanded for further proceedings.
 APPENDIX A — ASSIGNMENTS OF ERROR "I. Did the lower court error [sic] in failing to entertainthe fact that this appellant was a minor under the law of thestate of ohio and without counsel under rule 2151C2 [sic]."
 "II. Did the lower court error [sic] in refusing to considerlatches [sic] thereby giving mrs. taylor a pension plan afterforty (40) years?"
It is ordered that the appellant recover from appellee costs herein taxed.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Karpinski, J., and Gallagher, J., Concur.
[1] Because she was a minor at the time, E.T. brought the action through her mother. The case number, Juvenile Division No. 214757, has been incorrectly reported at various places throughout the record as No. 2714757.
[2] The record does not disclose the calculations used to reach this amount. CSEA originally sought child support in the amount of $4,336.17, and later reduced the amount to $4,323.17, although there is no explanation of how those sums were reached either.
[3] A two percent administrative fee was added, increasing the total monthly payment to $204.00.
[4] Solon v. Solon Baptist Temple, Inc. (1982),8 Ohio App.3d 347, 351-352, 8 OBR 458, 457 N.E.2d 858.
[5] Cf. Hartt v. Munobe, 67 Ohio St.3d 3, 7, 1993-Ohio-177,615 N.E.2d 617 (party asserting error has burden to present record showing error).
[6] State ex rel. Scioto Cty. Child Support Enforcement Agencyv. Gardner (1996), 113 Ohio App.3d 46, 56, 680 N.E.2d 221.
[7] Id.
[8] Ohio State Bd. of Pharmacy v. Frantz (1990),51 Ohio St.3d 143, 146, 555 N.E.2d 630.
[9] Id.
[10] (1984), 15 Ohio St.3d 34, 15 OBR 134, 472 N.E.2d 328.
[11] Id. at 36.
[12] Id. at 36-37.
[13] Gardner, 113 Ohio App.3d at 57.