[Cite as *Dragon v. Dragon*, 2016-Ohio-7304.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 104019

---

# KATHERINE DRAGON

### PLAINTIFF

vs.

# GERALD G. DRAGON

### DEFENDANT-APPELLANT

---

### JUDGMENT:
### REVERSED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-82-132150

**BEFORE:** S. Gallagher, J., Stewart, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** October 13, 2016

**FOR APPELLANT**

Gerald G. Dragon, pro se
19305 Apelt Drive
Cleveland, Ohio   44135


**ATTORNEYS FOR APPELLEE**

**For Cuyahoga Job and Family Services**
**Office of Child Support Services**

Timothy J. McGinty
Cuyahoga County Prosecutor
By:   Joseph C. Young
Assistant Prosecuting Attorney
CJFS-OCSS
3955 Euclid Avenue
Cleveland, Ohio   44115


**Also listed:**

Nikki L. Henderson
3915 Crossing Creek Drive
Claremont, North Carolina   28610

SEAN C. GALLAGHER, J.:

**{¶1}** Gerald Dragon disagrees with the denial of his request under R.C. 3119.961 for relief from a 30-year-old paternity determination, in which he also sought a court order to obtain genetic testing and relief from the ensuing child support order. Dragon alleges that he discovered new information with respect to whether he fathered the three children of his marriage. The trial court denied Dragon's motion, holding that the doctrine of res judicata precluded the court from offering Dragon any relief because he failed to appeal the 1982 paternity determination. The trial court erred, and therefore, we reverse and remand for further proceedings.

**{¶2}** Dragon was divorced from his now deceased wife in 1982, at which time Dragon was obligated to pay child support. By 2007, the support arrearage had grown to over $30,000 owed to the ex-wife, and around $750 owed to Cuyahoga County Child Support Enforcement Agency ("CSEA"). The arrearage was reduced to judgment. In late 2015, Dragon filed several motions for relief from the paternity and support orders, based on his claim that he was not the father of two of his three children. In that series of motions, Dragon also sought genetic testing.

**{¶3}** The issue before us is straightforward and limited in scope. The trial court applied the doctrine of res judicata to preclude Dragon's motion for relief from the paternity determination and the support order, holding that Dragon could have appealed the 1982 support order and also the 2007 order reducing the arrearage to judgment.

According to the trial court, because he could have filed appeals, he is now precluded from seeking relief under R.C. 3119.961.

{¶4} This court has consistently recognized that R.C. 3119.96 et seq. provides a "right to seek relief from judgment of paternity" without regard to a specific time limitation. *CSEA ex rel. E.T. v. H.S.*, 8th Dist. Cuyahoga No. 82820, 2004-Ohio-3120, ¶ 8. "[U]nder R.C. 3119.963, the judge is authorized to order genetic testing [in certain circumstances] and to enter judgment against any party who 'willfully fails to submit' to genetic testing." *Id.* In *CSEA ex rel. E.T.*, the mother gave birth to a daughter in 1964 and obtained a paternity determination the following year based on the father's admission, obligating the father to pay child support. *Id.* at ¶ 3. In 2001, CSEA attempted to liquidate the arrearage, and the father sought relief from the paternity and support determination. *Id.* Despite the procedural history, it was concluded that the father could seek relief from the paternity determination and support order under R.C. 3119.961. *Id.*; *see also In re H.M.*, 8th Dist. Cuyahoga No. 96470, 2011-Ohio-3697, ¶ 16 (father is free to proceed under R.C. 3119.961 and seek relief because there is no time limit precluding a motion filed under that statutory section). Importantly, the panel also noted that the failure to specifically reference R.C. 3119.961 in the motion is not dispositive; a party seeking relief under the statutory section is not required to expressly invoke the statutory sections for its application. *Id.* at ¶ 9. The same result must follow in this case. The doctrine of res judicata, in and of itself, does not preclude Dragon from filing a motion for relief from a paternity determination or support order.

**{¶5}** We acknowledge that res judicata may preclude a party from seeking relief under R.C. 3119.961 a second time. *See, e.g.*, *In re L.S.*, 8th Dist. Cuyahoga No. 91598, 2009-Ohio-617, ¶ 14. In *L.S.*, the father sought and was granted relief from the paternity determination under R.C. 3119.96 et seq.; but the trial court nonetheless enforced the arrearage, and father failed to appeal that decision. A second motion for relief from paternity was filed, in order to challenge the arrearage. *Id.* Under that specific circumstance, res judicata precluded the second filing because the father could have appealed the trial court's decision to enforce the arrearage after relief under R.C. 3119.961 was granted. *Id.* The second filing under R.C. 3119.96 et seq. was precluded pursuant to the doctrine of res judicata. This is Dragon's first attempt to seek relief under R.C. 3119.96 et seq., and therefore *L.S.* is inapplicable.

**{¶6}** Appellee responds by characterizing Dragon's motion for relief from paternity as one that must fail on the merits and is guided by Civ.R. 60(B). Under R.C. 3119.961(A), Civ.R. 60(B) is expressly inapplicable to motions for relief from paternity or a support order.

**{¶7}** Appellee also argues the trial court lacked jurisdiction because the court's continuing jurisdiction can only be invoked if a motion is served upon all parties under Civ.R. 75(J). This argument ignores the fact that R.C. 3119.96 et seq. independently imparts jurisdiction upon the trial court to resolve the motion filed by Dragon. There is no service requirement within the statutory framework; jurisdiction is solely predicated on filing a motion under R.C. 3119.961, and therefore, any reference to a trial court's

continuing jurisdiction under Civ.R. 75(J) is misplaced. As a result, appellee has not presented an argument supported by citations to the relevant authority as required by App.R. 16(A)(7).

{¶8} As to the substantive arguments, appellee argues that R.C. 3111.05, which provides that an action to determine paternity cannot be brought later than five years after the child's 18th birthday, precludes Dragon from filing the motion for relief for paternity. We disagree. As this court unambiguously noted, a motion for relief from paternity under R.C. 3119.96 et seq. is not an original action to determine paternity, and therefore, R.C. 3111.05 is inapplicable to a motion filed under R.C. 3119.96 et seq. *CSEA ex rel. E.T.*, 8th Dist. Cuyahoga No. 82820, 2004-Ohio-3120, ¶ 8.

{¶9} Appellee lastly argues that under R.C. 3119.962, Dragon must first present genetic testing before he can file a motion for relief from a paternity determination or support order under R.C. 3119.961. Essentially, appellee equates the requirement that "a court shall grant relief" if (1) it receives genetic testing, (2) the person has not adopted the child, and (3) the child was not conceived as a result of artificial insemination, as a jurisdictional roadblock to the filing of a petition under R.C. 3119.961. R.C. 3119.962, however, does not create a jurisdictional limitation to filing a petition under R.C. 3119.961; it merely provides that a court may only grant relief if the court receives genetic test results that are no more than six months old. *See, e.g., Hardy v. Wilson*, 9th Dist. Lorain No. 05CA008815, 2006-Ohio-4532, ¶ 18 (petitioner's genetic testing was older than the six-month limit imposed under R.C. 3119.962 and thus relief was

precluded). R.C. 3119.962 is silent as to when the trial court must receive the genetic test results. The petitioner is not required to have those results at the time the motion for relief is filed, but genetic test results must be provided to the court before relief can be granted.

{¶10} In *CSEA ex rel. E.T.*, for example, the father filed a motion to dismiss CSEA's attempt to liquidate a child support arrearage, claiming he was not the father. *Id.* at ¶ 4. In a supplement to that motion, the father claimed that both the mother and the then 38-year-old child refused to submit to genetic testing. *Id.* The judgment entry liquidating the arrearage was reversed and vacated because the trial court failed to consider the father's motion filed under R.C. 3119.96 et seq. and whether the mother's failure to submit to genetic testing was willful. *Id.* at ¶ 10. R.C. 3119.963(B) contemplates a motion being filed without genetic testing and unambiguously sets out the consequences for a party's failure to willingly submit to the genetic testing. *See id.* at ¶ 8. R.C. 3119.963(B) provides that the party willfully failing to submit to genetic testing shall have the motion for relief from paternity determined against that party's interest. *Id.* It is therefore possible to file a successful motion under R.C. 3119.961 without having first obtained the test results.

{¶11} If we accepted appellee's argument that a petitioner must have genetic test results in hand before filing a petition for relief under R.C. 3119.961 in order to invoke the jurisdiction of the trial court, we would be (1) contradicting the panel's conclusion in *CSEA ex rel. E.T.*, for which appellee has not presented any arguments in favor of

reconsidering precedent from this district; (2) disregarding the default clause under R.C. 3119.963(B); and (3) grafting language into R.C. 3119.962(A)(1)(a) to the effect of requiring the trial court to receive the genetic test results by a date certain. In light of the arguments presented, we decline to adopt appellee's jurisdictional requirement.

{¶12} We note that R.C. 3119.963 and, for that matter, *CSEA ex rel. E.T.*, only reference the willful failure of the mother or father to submit the child to genetic testing; neither contemplate the current situation in which emancipated children fail to submit to testing or even one in which the failure to submit to testing is not willful. It is important to note that R.C. 3119.963 does not indicate that a trial court may order genetic testing when the parents are noncompliant. Instead, the statute provides that willfully failing to submit to genetic testing shall result in the court finding in favor of the other party. R.C. 3119.963(B). This suggests that there is no inherent authority to order a party to submit to genetic testing. *See, e.g., State ex rel. Rojas v. Guilfu*, 8th Dist. Cuyahoga No. 84145, 2004-Ohio-6707, ¶ 16 (trial court did not err by refusing to order genetic tests because appellant failed to establish that the nonmoving party willfully failed to submit to genetic testing). R.C. 3119.963(A) is the only subdivision that expressly authorizes the trial court to order genetic testing, but that authorization only pertains to instances in which the genetic testing results submitted under R.C. 3119.962 are solely provided by the moving party.

{¶13} We need not reach any conclusions with respect to those observations as applied to the current case in which Dragon is seeking a court order to force the now

emancipated child to submit to genetic testing.  The trial court has not applied the correct standard in the first instance, so upon remand, the court shall consider Dragon's motion for relief from paternity or support order under the appropriate standards.  Our decision does not affect the trial court's ability to render any decision with respect to Dragon's motion.  We are simply reversing the denial of a motion that is solely predicated on an inapplicable legal doctrine.  The trial court is otherwise free to consider Dragon's motion for relief from a paternity determination or child support order anew, but under the applicable statutory standards.

{¶14} We reverse the denial of Dragon's motion and remand for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, domestic relations division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

MELODY J. STEWART, P.J., CONCURS;
FRANK D. CELEBREZZE, JR., J., DISSENTS WITH SEPARATE OPINION


FRANK D. CELEBREZZE, JR., J., DISSENTING:

**{¶15}** I must respectfully dissent from the majority's conclusion that the trial court's denial of Dragon's motion for relief from a paternity determination must be reversed.

**{¶16}** The trial court denied the motion without a hearing on res judicata grounds. This was clearly error. Res judicata does not apply to this situation because R.C. 3119.961 et seq. clearly provides a means of relief. *See* R.C. 3119.967. However, the trial court's decision was the correct one for different reasons. Therefore, I would affirm.

**{¶17}** R.C. 3119.962 has specific requirements for relief. A person filing a motion to overturn a parenting determination must satisfy three elements:

> (a) The court receives genetic test results from a genetic test administered no more than six months prior to the filing of the motion for relief that finds that there is a zero per cent probability that the person or male minor is the father of the child.

> (b) The person or male minor has not adopted the child.

> (c) The child was not conceived as a result of artificial insemination in compliance with sections 3111.88 to 3111.96 of the Revised Code.

**{¶18}** Here, the trial court was not presented with genetic test results demonstrating that Dragon was not the father of any of the children.

**{¶19}** The Ninth District has found that the language of R.C. 3119.962 is plain and unambiguous. *Hardy v. Wilson*, 9th Dist. Lorain No. 05CA008815, 2006-Ohio-4532, ¶ 17. It held that R.C. 3119.961 and 3119.962 are "conjunctive in nature" and must be read together. *Id.* It also held that any genetic test must have been administered prior to

a motion being filed and within six months of the filing of the motion. *Id.* at ¶ 21. In that case, the testing was performed more than six months before the motion for relief was filed and recertified after the motion was filed. *Id.* The Ninth District found such a scenario did not meet the requirements set forth in the statute. *Id.*

**{¶20}** Here, Dragon has not presented the lower court with necessary genetic test results. Therefore, Dragon is not entitled to any relief under the statute.

**{¶21}** Further, Dragon is not entitled to genetic testing. R.C. 3119.963(A) gives the lower court the power to order testing, but only when genetic test results are submitted to the court:

> *[I]f the genetic test results submitted* pursuant to section 3119.962 of the Revised Code in connection with the motion for relief *are solely provided by the moving party*, the court, upon its own motion, may order and, upon the motion of any party to the action, shall order the child's mother, the child, and the alleged father to submit to genetic tests. The clerk of the court shall schedule the genetic testing no later than thirty days after the court issues its order.

(Emphasis added.) *Id.*

**{¶22}** If the failure to submit test results is not a jurisdictional impediment as the majority holds, the court, without tests submitted with the motion, still cannot grant the relief Dragon seeks. This is because, without prior testing, the court cannot order testing. R.C. 3119.963 is clear that a court's ability to order testing is conditional: "[I]f the genetic test results submitted * * * are solely provided by the moving party * * *" only then can the court order testing. R.C. 3119.963(A). The statute presupposes test results are submitted by the moving party. Without them, the court has no authority to order

testing because no other provision of the statutory scheme gives the court that power. A motion under R.C. 3119.961 must be supported otherwise the motion turns into a fishing expedition, which is not what the legislature intended.

{¶23} Further, even if the court's jurisdiction was properly invoked and the court could order genetic testing in certain cases, it cannot do so here. Dragon wishes to force his children to submit to genetic testing. However, those children have long been emancipated. They are not parties to the action. The lower court has no jurisdiction over them. *See State ex rel. Doe v. Capper*, 132 Ohio St.3d 365, 2012-Ohio-2686, 972 N.E.2d 553, ¶ 13. The domestic relations court has no ability to force nonparties to submit to genetic testing. Therefore, the lower court cannot grant the relief Dragon seeks.

{¶24} There is a statutory presumption for willful interference with a court-ordered test. R.C. 3119.963 offers a presumption that the movant is not the father when a *party* who is the custodian or parent of a child willfully fails to submit a child to a genetic test. R.C. 3119.963(B). This presumption, even if it could apply where no test results were previously submitted, is not applicable here. Dragon's ex-wife cannot willfully interfere with genetic testing because she is deceased. There is no provision in the statute allowing the court to direct nonparties, the emancipated children, to undergo genetic testing, and no presumption favorable to Dragon if they refuse.

{¶25} This distinguishes *CSEA ex rel. E.T. v. H.S.*, 8th Dist. Cuyahoga No. 82820, 2004-Ohio-3120, from the present case. The majority points to the holding in *CSEA ex*

*rel. E.T.* that R.C. 3119.963 provides the court with authority to order genetic testing. However, that panel of this court never addressed the actual language of the statute, it merely stated that "R.C. 3119.96 et seq. provides a right to seek relief from a judgment of paternity without a specific time limit. Moreover, under R.C. 3119.963, the judge is authorized to order genetic testing and to enter judgment against any party who 'willfully fails to submit' to genetic testing." *Id.* at ¶ 8. There is nothing in this opinion that addresses the prerequisites for testing or relief. *CSEA ex rel. E.T.* is not helpful.

**{¶26}** Finally, Dragon did not serve a necessary party with his motion. In a more typical case, when a reputed father seeks relief from a paternity determination or support order, the mother of the child is a necessary party because adjudication of the motion substantially affects her rights and she may transfer venue or assert defenses to the action that are built into the statutory scheme. Civ.R. 19; R.C. 3119.961(B); R.C. 3119.962(B). Dragon failed to serve his ex-wife's estate with his R.C. 3119.961 motion. The majority rejects the argument advanced by CJFS-OCSS that Civ.R. 75(J) applies and Dragon was required to serve his motion on his ex-wife's estate. The majority correctly concludes that Civ.R. 75(J) does not apply here because R.C. 3119.961 et seq. is itself a source of jurisdiction. However, a motion for relief from paternity must still be served on all parties consistent with Civ.R. 5. Civ.R. 7(B). That was not done here.

**{¶27}** Ohio courts have strictly enforced Civ.R. 5. *Nosal v. Szabo*, 8th Dist. Cuyahoga Nos. 83974 and 83975, 2004-Ohio-4076, ¶ 21; *Manor Care Healthcare Corp. v. Cook*, 8th Dist. Cuyahoga No. 64003, 1993 Ohio App. LEXIS 18 (Jan. 7, 1993); *PHH*

*Mtge. Corp. v. Albus*, 7th Dist. Monroe No. 09 MO 9, 2011-Ohio-3370, ¶ 12. Further, "a party's failure to join an interested and necessary party constitutes a jurisdictional defect that precludes the court from rendering a judgment in the case." *State ex rel. N.G. v. Cuyahoga Cty. Court of Common Pleas*, Slip Opinion No. 2016-Ohio-1519, ¶ 27, citing *State ex rel. Doe*, 132 Ohio St.3d 365, 2012-Ohio-2686, 972 N.E.2d 553, at ¶ 15, citing *Portage Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, ¶ 99. While this line of cases originated with declaratory judgments, it has been extended to other areas. *See Homeowners Assn. at Arrowhead Bay v. Fidoe*, 7th Dist. Mahoning No. 12 MA 136, 2014-Ohio-1469, ¶ 19. Dragon did not attempt to serve his ex-wife's estate with his motion. The action could not have been fairly decided without service to her estate and an opportunity to be heard. Dragon's attempt to have his motion heard ex parte should not be countenanced.

{¶28} For these reasons, I would affirm the dismissal of Dragon's motion, rather than remand this case to the trial court. The majority seems to acknowledge that the trial court will simply deny the motion because Dragon cannot be afforded relief under the statutory scheme. This litigation could and should end here.