[Cite as *In re B.M.*, 2026-Ohio-264.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE B.M. | : | No. 115239 |
| A Minor Child | : | |
| [Appeal by J.M., Father] | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** January 29, 2026

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. CU16102653

***Appearances:***

Jeffrey V. Hawkins, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Marilyn Orkin Weinberg, Assistant Prosecuting Attorney, *for appellee* Office of Child Support Services.

EILEEN T. GALLAGHER, J.:

{¶ 1} Appellant J.M. challenges the judgment of the juvenile court denying his motion to compel A.M. ("Mother") to cooperate with genetic testing and his motion to release him from paternity of the minor child, B.M. (d.o.b. 10/7/2008). He raises one assignment of error:

The trial court erred and abused its discretion by failing to facilitate the genetic testing of the minor child and the mother by therefore overruling the Father's Application for Release from Paternity findings.

{¶ 2} After a thorough review of the applicable law and facts, we find that the trial court erred in determining that it lacked jurisdiction to consider J.M.'s motion for release from paternity and denying his motion to compel as moot. We sustain J.M.'s sole assignment of error, reverse the judgment of the trial court, and remand for the court to (1) determine whether Mother willfully failed to submit B.M. for genetic testing, and (2) properly consider J.M.'s motion for release from paternity.

## I. Factual and Procedural History

{¶ 3} Paternity of B.M. had been established in 2008 via voluntary acknowledgement after J.M. signed an affidavit stating that he was the natural father of B.M. and assumed the parental duty of her support. There is no dispute that the affidavit was never rescinded nor had any action been commenced under R.C. 3111.28 to rescind the acknowledgment.

{¶ 4} In February 2016, J.M. filed an application to determine custody, parenting time, shared parenting plan, companionship, and visitation of B.M.[1] As part of the application, J.M. asserted that paternity had been established. He sought custody, parenting time, shared parenting, or visitation, asserting that the current living arrangements were not healthy or in B.M.'s best interest.

---

[1] The underlying action also pertained to two other minor children, who are now emancipated. Because this appeal only concerns B.M., we will address the facts and issues solely as they relate to her.

{¶ 5} The magistrate designated both J.M. and Mother as residential parents and legal custodians. Mother was granted parenting time on the weekends, and B.M. was to be with J.M. the remainder of the time.

{¶ 6} Mother objected to the magistrate's decision, arguing that J.M. was not the biological father of B.M. and moved to stay the proceedings. She attached to her objections the results of recent genetic testing showing that another individual was B.M.'s biological father. Mother noted that the results of the genetic testing had not been available at the time of the custody hearing.

{¶ 7} The juvenile court overruled Mother's objections and adopted the decision of the magistrate.

{¶ 8} Mother subsequently filed a motion for relief from paternity determination, motion to disestablish paternity, request for genetic testing, and a motion to stay the decision granting custody to J.M. J.M. opposed these motions, arguing that they were barred by res judicata because Mother had already raised the potential argument that J.M. might not be the father of B.M. The court denied all of Mother's motions because paternity had already been established at the time of B.M.'s birth.

{¶ 9} In August 2019, J.M. moved to modify the custody order, seeking full custody of B.M. He asserted that Mother had not seen or tried to contact her in several weeks and had been inconsistent with her parenting time.

{¶ 10} The court granted the motion to modify in January 2021 but designated Mother as the residential parent and legal custodian of B.M. and

terminated the parties' shared parenting plan. The court noted that J.M. had not executed a proposed agreed judgment entry regarding custody and had failed to appear at the motion hearing.

{¶ 11} Mother subsequently sought child support from J.M., and the Office of Child Support Services was permitted to intervene as a party in July 2024.

{¶ 12} In January 2025, J.M. filed a motion for release from paternity determination pursuant to R.C. 3119.961, arguing that a genetic test had established that he was not the biological father of B.M. He stated that these test results were attached as an exhibit to his motion; however, the genetic-test results attached to the motion were the same genetic-test results from March 2017 pertaining to the probability that another individual was the father of B.M. and did not make any determination as to J.M.'s probability of paternity.[2]

{¶ 13} The magistrate determined that J.M.'s motion had not complied with the requirements of R.C. 3119.96, et seq. The court granted J.M. leave until March 14, 2025, to present genetic-test results not older than six months that demonstrated a zero percent probability that J.M. was the father of B.M. and to file the appropriate pleading under the statutes. The court warned that failure to comply could result in the denial of the motion without further hearing.

{¶ 14} On March 18, 2025, J.M. filed a motion to compel Mother to cooperate with genetic testing and to extend the deadline to file genetic-test results. In support

---

[2] The testing concluded that the probability that the other individual was the father of B.M. was 99.99999999%.

of his motion, J.M. submitted a copy of an email from January 24, 2025, that he had sent to his attorney stating that he had completed his part of the genetic testing. He also attached two emails sent by his attorney to Mother regarding genetic testing. The first was dated January 27, 2025, and asked her to arrange for genetic testing; the second email was from February 10, 2025, inquiring if Mother had completed the testing. J.M. did not present any evidence of any responsive communications by Mother regarding the genetic testing.

{¶ 15} In reviewing J.M.'s motion, the magistrate determined:

The Court finds that the statute clearly requires that the father first obtain the genetic test results that are no older than six (6) months to attach to his motion for relief. The jurisdiction to address the motion is not invoked until the proper filing is made and service is perfected upon all necessary parties. This has not occurred in this case.

{¶ 16} The magistrate denied the motion to release for failure to state a claim upon which relief could be granted and denied the motion to compel and motion to extend as moot.

{¶ 17} J.M. filed objections to the magistrate's decision, arguing that all parties, along with the court, knew that he was not the father of B.M. He asserted that the court was required to order Mother to submit the child to genetic testing under R.C. 3119.963.

{¶ 18} The trial court overruled the objections and adopted the decision of the magistrate. J.M. then filed the instant appeal.

## II. Law and Analysis

{¶ 19} Under R.C. 3119.961(A), a person may file a motion for relief from a final judgment that determines that the person is the father of a child or from a child-support order under which the person is the obligor. Upon the filing of such a motion, the court shall grant relief if the court (1) receives genetic-test results from a genetic test administered no more than six months prior to the filing of the motion for relief that finds that there is a zero percent probability that the movant is the father of the child, (2) finds that the movant has not adopted the child, and (3) finds that the child was not conceived as a result of artificial insemination. R.C. 3119.962.

{¶ 20} In the instant matter, J.M. did not provide the proper genetic-test results with his motion for relief. The court granted him leave to obtain genetic-test results stating that there is a zero percent probability that he is the father of B.M. It appears that J.M. then submitted to genetic testing and requested that Mother present B.M. for the same. J.M. informed the court that Mother had not done so and asked the court for an order compelling her to cooperate with the genetic testing of B.M.

{¶ 21} On appeal, J.M. argues that the juvenile court had the inherent authority to order the genetic testing of B.M. and that the trial court erred in not compelling Mother to comply with the testing.

{¶ 22} The juvenile court determined that it was without jurisdiction to consider J.M.'s motion for release from paternity because J.M. had not provided the proper genetic-test results required by R.C. 3119.961. However, this court has held

that a movant is not required to present the genetic-test results before filing a motion for release from paternity. *Dragon v. Dragon*, 2016-Ohio-7304, ¶ 9 (8th Dist.). The only statutory requirement is that the test results have to be provided to the court before relief can be granted. *Id.* The *Dragon* Court specifically noted that R.C. 3119.962 "does *not* create a jurisdictional limitation to filing a petition under R.C. 3119.961; it merely provides that a court may only grant relief if the court receives genetic-test results that are no more than six months old." (Emphasis added.) *Id.*, citing *Hardy v. Wilson*, 2006-Ohio-4532, ¶ 18 (9th Dist.). The statute provides no constraints on when the trial court must receive the genetic-test results. Thus, the trial court erred in determining that it lacked jurisdiction to consider J.M.'s motion because he had not already presented the proper genetic-test results.

{¶ 23} We now consider whether the trial court erred in denying as moot J.M.'s motion to compel Mother to cooperate with the genetic testing of B.M. R.C. 3119.963 provides:

> (A) In any action for relief instituted under section 3119.961 of the Revised Code, if the genetic test results submitted pursuant to section 3119.962 of the Revised Code in connection with the motion for relief are solely provided by the moving party, the court, upon its own motion, may order and, upon the motion of any party to the action, shall order the child's mother, the child, and the alleged father to submit to genetic tests. The clerk of the court shall schedule the genetic testing no later than thirty days after the court issues its order.

> (B) If the mother is the custodian of the child and willfully fails to submit the child to genetic testing, if the alleged father of the child willfully fails to submit himself to genetic testing, or if the alleged father is the custodian of the child and willfully fails to submit the child to genetic testing, the court shall issue an order determining the motion for relief against the party failing to submit the party or the child to the

genetic testing. If a party shows good cause for failing to submit to genetic testing or for failing to submit the child to genetic testing, the court shall not consider the failure to be willful.

{¶ 24} The *Dragon* Court noted that a trial court has "no inherent authority to order a party to submit to genetic testing." *Dragon* at ¶ 12, citing *State ex rel. Rojas v. Guilfu*, 2004-Ohio-6707, ¶ 16 (8th Dist.). R.C. 3119.963(A) expressly authorizes the trial court to order genetic testing, but that authorization only applies to instances in which the genetic-test results submitted under R.C. 3119.962 are solely provided by the moving party. Here, there were no proper genetic-test results submitted to the court by J.M.[3]

{¶ 25} However, R.C. 3119.963(B) unambiguously sets forth the consequences for a party's failure to willingly submit a child to genetic testing. While it appears that Mother did not present B.M. for genetic testing, the trial court did not determine whether Mother had willfully failed to do so.

{¶ 26} J.M.'s sole assignment of error is sustained as it relates to the trial court's denial of his motion for release from paternity. The trial court erred in determining that it lacked jurisdiction to adjudicate the motion. We make no finding on the potential success of J.M.'s motion; on remand, the juvenile court should consider J.M.'s motion under R.C. 3119.96, et seq., and, in particular, whether Mother "willfully failed" to submit B.M. to genetic testing.

---

[3] It is unclear how a party could submit genetic-test results demonstrating a zero percent probability of paternity if the child had not also been tested; however, we need not consider this issue because J.M. had not submitted any genetic-test results that pertained to himself. Moreover, J.M. has not raised this issue in his appeal.

**{¶ 27}** Judgment reversed, and case remanded for the court to consider J.M.'s motions under R.C. 3119.96, et seq.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN T. GALLAGHER, JUDGE

MICHELLE J. SHEEHAN, A.J., and
MARY J. BOYLE, J., CONCUR